IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. KRISTI EMERSON and LEANN TUESCA, | ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 1:15-cv-00027 |
| v. | ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE FRENSLEY |
| SIGNATURE HEALTHCARE, LLC et al., | ) ) ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, to Stay and Compel Arbitration. (Doc. No. 66). Plaintiffs filed a Response in Opposition (Doc. No. 72), Defendants filed a Reply (Doc. No. 79), Plaintiffs filed a Sur-Reply (Doc. No. 82), and Defendants filed a Sur-Sur-Reply (Doc. No. 85). For the reasons discussed below, Defendants' Motion is **DENIED** without prejudice to refiling.

### I. PROCEDURAL BACKGROUND

Plaintiffs filed the original complaint in this matter on March 27, 2015, pursuant to the *qui tam* provisions of the Federal False Claims Act, 31 U.S.C. § 3730(b), alleging, *inter alia*, that Defendants had an ongoing scheme to defraud the United States by billing Medicare for unnecessary and non-provided therapy and failing to bill Medicare Part B beneficiaries for co-pays. (See Doc. No. 1 ¶¶ 1-5). Defendants settled with the United States in May of 2018. (See Doc. Nos. 46, 48). Plaintiffs' remaining claims against Defendants are for retaliation under the Federal False Claims Act, 31 U.S.C. § 3730(h). (Doc. No. 63 ¶ 1).

On September 12, 2018, Defendants moved to dismiss, or alternatively, to stay this action and to compel arbitration on the grounds that Plaintiffs are "parties to arbitration agreements in which they consented to arbitrate disputes arising out of their employment, including claims over alleged violations of federal or state laws." (Doc. No. 66 at 1). Plaintiffs argue Defendants' motion should be denied because "[t]he parties did not agree to arbitrate, and no contract to arbitrate was formed under Tennessee law." (Doc. No. 72 at 2).

## II. LEGAL STANDARD

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Such review requires the Court to determine first whether "a valid agreement to arbitrate exists between the parties," and second whether "the specific dispute falls within the substantive scope of the agreement." *Id*. In determining whether parties agreed to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." *Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 936 (E.D. Tenn. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question. *Id*. (citing 9 U.S.C. § 4). In order to show that the validity of the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *Id*. The required showing mirrors that required to withstand summary judgment in a civil suit - that is, she must come forward with sufficient evidence that, when viewed in the light most favorable to her, would permit "a reasonable finder of fact [to] conclude that no

2

valid agreement to arbitrate exists." *Id.*; *see also Mazera v. Varsity Ford Management Services, LLC*, 565 F.3d 997, 1001 (6th Cir. 2009) ("[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits ... should be sufficient to require a jury determination on whether there had in fact been a meeting of the minds.") (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980)); *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) ("In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party."). Thus, the Court will review the pleadings and evidence submitted by the parties and construe the facts therein in a light most favorable to Plaintiffs.

### III. ANALYSIS

In Tennessee, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Doe v. HCA Health Servs. Of Tenn, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (internal citation and quotation omitted). Defendants contend there are two valid agreements to arbitrate with each Plaintiff: (1) the arbitration agreements Plaintiffs entered into with Home Quality Management, Inc. ("HQM"); and/or (2) the arbitration agreements Plaintiffs entered into with Signature. The Court will consider each of the claimed agreements to arbitrate in turn.

#### A. HQM Agreements

Defendants produced documents they assert are the arbitration agreements Plaintiffs signed with HQM. (See Doc. No. 68, PageID# 397, 401-402, 459; Doc. No. 79-1, PageID# 782, 754). Defendants contend that (1) "Signature acquired HQM in 2007" and "specifically acquired all of the contractual rights and agreements of HQM, including HQM's mutually binding arbitration

3

agreement[s]", (Doc. No. 67 at 6; *see also* Doc. No. 79-1, PageID# 754), and (2) that "the HQM arbitration agreement signed by each Plaintiff was assigned to Signature." (Doc. No. 79 at 7).

Defendants have not produced the assignment that they rely on to enforce the HQM agreements. Instead, Defendants have produced evidence that Las Palmas SNF, LLC was the sole purchaser of several skilled nursing facility businesses, including the facility HQM operated in Columbia. (*See* Asset Purchase Agreement, Doc. No. 79-2, PageID# 789-928). As the purchaser, Las Palmas SNF, LLC acquired "all contracts" and "agreements" by which any of the seller parties or their subsidiaries were bound, which Defendants assert included HQM's arbitration agreements with Plaintiffs. (*See* Sandra Adams Declaration ¶ 4, Doc. No. 79-2, PageID# 785; Asset Purchase Agreement, Doc. No. 79-2, PageID# 798).

Defendants have also produced evidence that Las Palmas SNF, LLC assigned its rights, title, interests, and obligations under the Asset Purchase Agreement to Defendant Signature Healthcare, LLC. (*See* Amendment to Asset Purchase Agreement, Doc. No. 79-2, PageID# 930-935). Defendants argue the foregoing evidence establishes "that the HQM arbitration agreement signed by each Plaintiff was assigned to Signature." (Doc. No. 79 at 6-7).

In response, Plaintiffs argue Defendants have only produced evidence that Defendant Signature Healthcare, LLC was assigned the contractual rights of HQM. (Doc. No. 82 at 8). Plaintiffs correctly point out that there is nothing in the record to establish that Defendants LP Columbia, LLC d/b/a Signature Healthcare of Columbia, Signature Healthcare Consulting Services, LLC, Signature Rehab Services, LLC or Stakeholder Payroll Services, LLC could share in the benefit of any assignment conferred to Defendant Signature Healthcare, LLC by Las Palmas SNF, LLC. (*Id.*).

4

Additionally, Plaintiff Tuesca notes the signature page for the arbitration agreement Defendants assert is between her and HQM states that Columbia Care & Rehab is her employer. (Doc. No. 82 at 7 (citing Doc. No. 79-1, PageID# 782)). Plaintiff Tuesca also notes Columbia Care & Rehab is not listed as an acquired entity in the Asset Purchase Agreement. (Doc. No. 87 at 7). Thus, Plaintiff Tuesca argues that Defendants have still not established any right to enforce that arbitration agreement. (*Id*.).

Defendants filed a Reply and a Sur-Sur-Reply (Doc. Nos. 79, 85), but they did not produce the assignment as to Defendant Signature Healthcare, LLC or offer an explanation as to how the other Signature Defendants could be assignees of the HQM arbitration agreements. Nor did Defendants address the factual issue raised by Plaintiff Tuesca as to the entity that her purported arbitration agreement was with and how or when they acquired the rights to that agreement.

Viewing the evidence in the light most favorable to Plaintiffs, as the Court is required to do at this stage, the Court finds genuine issues of material fact as to the validity of the HQM agreements to arbitrate as to these Defendants.

### B. Signature Agreements

Alternatively, Defendants argue that there are valid agreements to arbitrate between "Signature" and each Plaintiff. (Doc. No. 79 at 4-6). Defendants do not dispute that they do not possess Signature arbitration agreements signed by Plaintiffs. Instead, Defendants assert that "[b]oth Plaintiffs manifested their assent to be bound by arbitration by signing the handbook acknowledgment and continuing to work for Signature with the knowledge that agreeing to arbitrate with Signature was a condition of employment." (*Id*. at 6).

In support of their position, Defendants produced both Plaintiffs' signed handbook acknowledgement forms, which state:

5

Case 1:15-cv-00027   Document 88   Filed 09/30/19   Page 5 of 8 PageID #: 982

> I acknowledge that I have received a copy of the company's Stakeholder Handbook revised on November 1st, 2007 and effective January 1st, 2008. I understand it is my responsibility to familiarize myself with its provisions. I understand that this Stakeholder Handbook is not intended to, nor does it constitute a contract of employment or a promise or guarantee of benefits or policies stated in it.
>
> I also understand that this Stakeholder Handbook is only a brief summary of the policies and procedures of this company and an overview of the rules and practices. I am aware that the company's **Human Resources Policies and Procedures** has further information regarding each of the items discussed in the Stakeholder Handbook and I can contact Human Resources to review.
>
> I further understand that the company may, on its own, change or discontinue any policy in the stakeholder handbook or other writing, without having to consult anyone and without anyone's agreement and at any time.

(Doc. No. 68, PageID # 404, 461). Defendants also produced the Stakeholder Handbook, which contained the following provision pertaining to arbitration:

> All disputes between Stakeholders and the company or its management, which are not resolved through the Conflict Resolution procedure, must be submitted to binding arbitration. As a condition of employment, applicants and Stakeholders shall sign an Arbitration Agreement.
>
> Signed acknowledgment of receipt of the Stakeholder Handbook shall serve as acceptance and understanding of this condition of employment, thereby binding Stakeholders to the Arbitration Agreement.

(Doc. No. 68 at 23). Relying on *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967 (6th Cir. 2007), Defendants argue the foregoing evidence demonstrates a valid agreement to arbitrate between the parties. (Doc. No. 67 at 10). Defendants have not produced the Signature arbitration agreements that they seek to enforce against Plaintiffs.[1]

---

[1] According to the declaration submitted by Defendant Signature Rehab Services, LLC's Vice President of Human Resources since 2014, Heather Howe, "the first page of the Arbitration Agreement used by

6

In response, Plaintiffs admit to signing the handbook acknowledgment forms, but they have filed declarations denying that they received copies of the Stakeholder handbook. (Doc. No. 73 ¶ 3; Doc. No. 74 ¶ 6). Plaintiffs state that if they had known about the arbitration provision in the handbook they would not have signed the arbitration acknowledgment forms. (Doc. No. 73 ¶¶ 3-4; Doc. No. 74 ¶ 6). Further, Plaintiffs state that Signature presented them with arbitration agreements at the same time they were given the handbook acknowledgement forms, and that neither of them signed the arbitration agreements. (Doc. No. 73 ¶¶ 2-4; Doc. No. 74 ¶¶ 2-3, 5-6). Plaintiff Emerson also recalls subsequently discussing her unwillingness to sign an arbitration agreement with two different HR managers. (Doc. No. 73 ¶¶ 5-6).

In reply, Defendants filed the declaration of Tracy Harrison, Defendant Signature HealthCARE Consulting Services, LLC's Vice President of Human Resources from August 2006 to March of 2012,[2] stating that she emailed the "then-new Signature Stakeholder Handbook" on November 1, 2007, to the human resources administrators for all former HQM facilities, regional human resources staff, regional facility operations staff, and facility administrators for all Signature facilities with instructions to "print and distribute" the handbook to all employees "as soon as possible." (Doc. No. 79-1 ¶ 3). According to Ms. Harrison, the email also "conveyed the requirement that all new hires would need to receive and sign for the current and new handbook between November 1, 2007 and December 31, 2007." (*Id.*). Additionally, Ms. Harrison states "no individual – including Ms. Emerson or Ms. Tuesca – would have been permitted to begin or

---

Signature for new employees in 2007" was the same as the first page of arbitration agreement Defendants assert that Plaintiff Tuesca entered with HQM. (*See* Heather Howe Declaration, Doc. No. 68 ¶¶ 2, 10, PageID# 396-399).

[2] Ms. Harrison has been employed as Chief Human Resources Officer for Defendant Signature HealthCARE Consulting Services, LLC and its affiliates since March of 2018. (Doc. No. 79-1 ¶ 2).

7

continue employment if she did not agree to resolve all employment disputes through mandatory and binding arbitration." (*Id*. at ¶ 5).

Viewing the evidence in the light most favorable to Plaintiffs, as the Court is required to do at this stage, the Court finds genuine issues of material fact exist as to the validity of the claimed agreements to arbitrate with Signature. *See Mazera v. Varsity Ford Management Services, LLC*, 565 F.3d 997, 1001 (6th Cir. 2009) ("[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits ... should be sufficient to require a jury determination on whether there had in fact been a meeting of the minds.") (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980)).

\* \* \*

For the foregoing reasons, Defendants' Motion will be **DENIED** without prejudice to refiling after the parties engage in discovery addressing the factual issues surrounding the validity of the arbitration agreements.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE